UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SOUTHERN PIPE & SUPPLY CO INC     CIVIL ACTION NO. 24-cv-938

VERSUS     MAGISTRATE JUDGE HORNSBY

ARTIC AIR CONDITIONING & HEATING
INC ET AL

## MEMORANDUM RULING

### Introduction

Southern Pipe & Supply Company, Inc. ("Southern Pipe") sold materials to Artic Air Conditioning & Heating, Inc. ("Artic Air") on open account. Southern Pipe filed this civil action against Artic Air to collect a balance of $68,858.02 plus attorney's fees. Also named as defendants are Scott and Tamra Parks, who are alleged to be liable as Artic Air's guarantors. The case was referred to the undersigned pursuant to 28 U.S.C. § 636(c) and the consent of the parties.

Before the court is Southern Pipe's **Motion for Summary Judgment (Doc. 22)** that seeks judgment in its favor for the full amount due on the account. Artic Air contends that it is not responsible for invoices that it did not sign and that the amount Artic Air owes should be reduced by approximately $20,000 that Southern Pipe withheld from an employee's pay because the employee violated company policy when he extended credit to Artic Air after its account was locked. For the reasons that follow, the court finds that Southern Pipe has met its burden and is entitled to summary judgment for the full amount

sought on the account. Southern Pipe is also entitled to attorney's fees pursuant to the Louisiana open accounts law and the terms of a contract between the parties.

**Southern Pipe's Summary Judgment Evidence**

Southern Pipe is a distributor of plumbing, heating, air conditioning, and other supplies. It has multiple locations, including a Shreveport location that opened in January 2023. Artic Air is a local HVAC contractor that installs residential HVAC equipment in the Shreveport/Bossier City area, and it became a customer of the new Southern Pipe location. Some of the employees at Southern Pipe previously worked at another local distributor, so they were familiar with Artic Air and its principals.

Scott and Tamra Parks, as president and co-president of Artic Air, completed a Confidential Credit Application with Southern Pipe in January 2023. The terms included that full payment was due each month by the 10th for purchases made through the 25th of the previous month. Invoices billed between the 26th and the last day of the month were considered part of the subsequent month's billing. Balances not paid by the last calendar day of the month would be considered past due. The Application stated that its terms constituted the entire agreement between the parties. The Application also included a guaranty by which Scott and Tamra Parks jointly and severally guaranteed to Southern Pipe payment of all indebtedness of Artic Air. Doc. 22, Exhibit 1-A.

Artic Air purchased approximately $200,000 worth of materials over the first several months of the agreement. Mr. Parks would call or text a Southern Pipe employee a list of materials, and Southern Pipe would deliver them to Artic Air. Artic Air sometimes paid its account in full, but it was sometimes tardy and sometimes made only partial

payments.  In the summer and fall of 2023, Artic Air's account balance reached a level of arrears that caused it to be automatically locked by Southern Pipe's corporate accounting office, meaning that Artic Air could not use credit to place any new orders.  Artic Air sometimes paid enough to reopen the account for a time, but at a certain point Southern Pipe completely locked the Artic Air account.

After the account was locked, and without the knowledge of the manager of the Southern Pipe Shreveport location, certain Southern Pipe employees allowed Artic Air to continue purchasing materials on credit.  The employees could not log the purchases in Southern Pipe's computer system, so they recorded them by hand in a notebook.  The manager discovered these off-the-books sales during an inventory audit that revealed a sizable amount of missing HVAC inventory.  The Southern Pipe employees admitted what they had done and produced the handwritten notebook entries.  The notebook lists matched, to the penny, the missing items from Southern Pipe's warehouse inventory.

Southern Pipe typed the notebook entries and billed Artic Air on December 6, 2023 for all of the previously unbilled purchases.  The amount of that invoice was $35,488.91, which is more than half of the total $68,858.02 account balance sought in this case.

Southern Pipe disciplined the employee who sold to Artic Air on credit in violation of company policy.  The company applied a provision of its Held Ticket Policy (Doc. 22, Ex. 3-b), which allows the company to hold an individual personally responsible for the funds owed and make payroll deductions of up to 10% of salary and 100% of bonus until the balance is made up to the company.  Dana Vincent, Southern Pipe's credit manager, stated in a declaration made under penalty of perjury and in compliance with 28 U.S.C. §

1746, that 13 credits were applied, internally, for a total of $21,349.28 that were deducted from the employee's compensation pursuant to the policy.

Vincent explained that this does not reduce the amount owed by Artic Air to Southern Pipe because, pursuant to the policy, employees are reimbursed for payroll deductions upon receipt of payment from the customer. Doc. 22, Ex. 3. The store manager testified in a Rule 30(b)(6) deposition that the payments made by the employee were not deducted from the amount owed by Artic Air. He explained that corporate charges such bad debt to the local store, which in turn takes deductions from the responsible employee's pay. He stated that, pursuant to the policy, the employee would be refunded the deductions if Southern Pipe is successful in collecting from Artic Air. Doc. 26, Ex. 1, pp. 161-69.

Southern Pipe's counsel sent a demand letter to Artic Air, Scott Parks, and Tamra Parks on March 18, 2024. It demanded that they immediately pay the entire amount due on the open account and guaranty. Doc. 22, Ex. 5. No payment was made, and Southern Pipe filed this civil action on July 15, 2024.

**Applicable Law**

An open account is "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. 9:2781(D). Southern Pipe contends that Artic Air is liable under both this open account statute and for breach of contract in the form of the Confidential Credit Application. The defendants do not contest that Artic Air signed the Application and the Parkses signed the guaranty. They also do not contest that the open account statute is applicable.

Page **4** of **10**

In an action on an open account, the plaintiff bears the burden of proving his demand by a preponderance of the evidence. The plaintiff must first prove the account by showing that it was kept in the ordinary course of business by introducing supporting testimony as to its accuracy. Brown v. McGinity, 347 So. 3d 900, 905 (La. App. 1st Cir. 2022), writ denied, 349 So. 3d 575, (La.). Once the plaintiff has established a prima facie case, the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits. Bacik Grp. LLC v. Apex Disaster Specialists Louisiana LLC, 2023 WL 1460537, *4 (W.D. La. 2023) (Doughty, J.). This matter comes before the court on a motion for summary judgment, so the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).

**Analysis**

Southern Pipe has met its initial burden by demonstrating that the account was kept in the ordinary course of business over the course of several months. It has submitted the applicable invoices along with the declaration of Dana Vincent that the record includes a full transaction report showing all charges incurred and payments made by Artic Air on its account with Southern Pipe.

The defendants do not contest that the account was kept in the ordinary course of business, but Southern Pipe's motion anticipated any concerns in that area related to several of the sales being recorded in a notebook but not entered in the computer until discovered by management. The motion pointed to testimony from Southern Pipe's Rule 30(b)(6) deposition that the manager always required employees to record sales in notebooks, in

addition to the computer entries that were made after an order was completed, in the event a customer questioned an order or other fact checking was needed. The handwritten notebooks were kept until they were full, then retained for about another month. Doc. 22, Ex. 3, pp. 78-81. This unchallenged evidence satisfies the ordinary course of business requirement.

Artic Air's first response to the motion for summary judgment states that the "problem" with its account began with the December 6, 2023 invoice for $35,488.91. Mr. Parks made inquiry, and Southern Pipe employee Jamie Barringer told Parks that he had been holding tickets from as far back as August 2023 after Arctic Air's account was locked by corporate. Counsel wrote in his memorandum: "According to Mr. Parks, Artic Air would be responsible for invoices that were signed, and he specifically told Barringer that this is how Artic Air operates—the invoices had to be signed by employees of Artic Air." Counsel adds that Mr. Parks "testified in his deposition that this should have been the way things worked from Day One." "Unsworn … memoranda … are not, of course, competent summary judgment evidence." Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). The actual summary judgment evidence does not support the memorandum's assertion that the parties agreed that invoices had to be signed by the customer before the customer was responsible for payment of delivered items.

Mr. Parks was asked at his deposition if he contends that the written contract between the parties contains a provision that required Artic Air to sign invoices in order for Artic Air to be responsible for what they buy. Parks first said that it had to be in the contract, but when called on to point to such a provision, he admitted: "Ok. It's not in

Page **6** of **10**

there." Doc. 26, Ex. 2, pp. 30-31. Artic Air has also not pointed to any competent evidence of any other mutual agreement that invoices had to be signed by the customer before the customer was responsible for payment of delivered items. Thus, there is no evidence to support the argument made in Artic Air's memorandum that it is not responsible for unsigned invoices.

Artic Air's memorandum also argues that Mr. Parks referenced two jobs, the Neely and Tiffany jobs, where Artic Air ordered materials from Southern Pipe that never arrived but were billed. Mr. Parks testified at his individual deposition that he ordered material from Southern Pipe for the Tiffany house, but Southern Pipe "delivered the wrong stuff." He said that he got the correct materials from another source and is confident that Southern Pipe billed him for the incorrect materials. He testified that he sent a purchase order for the Neely job, but nothing was shipped. Doc. 26, Ex. 2, pp. 40-45.

But at the Rule 30(b)(6) deposition of Artic Air, designated representative Linda Lucas was asked if Artic Air was definitively saying that it knows that it did not purchase materials included in the disputed amount. She answered, "Artic Air is saying we don't know." She was then asked if Artic Air had any information to suggest that any of the invoices for the disputed amount were inaccurate. Specifically, she was asked if there was "any specific charge on any invoice -- and we can go through them -- that you can point to and say we know we did not buy this?" Answer: "No." Doc. 22, Ex. 1, pp. 47-48.

Southern Pipe has met its burden of showing that the account was kept in the ordinary course of business, and it has introduced supporting testimony and documentation as to the accuracy of the amounts billed. The burden then shifted to Artic Air to prove the

inaccuracy of the account. Artic Air can only point to vague and unsupported assertions by Mr. Parks that improper materials, or no materials, were delivered for a couple of jobs, but he did not point to any particular items on any of the invoices and contend that those were not received (or were improper equipment). Artic Air, the principal defendant and debtor, testified that it could not point to any specific charge for which it could say Artic Air did not buy the item. The court finds, under these circumstances, that Southern Pipe satisfied its burden, and Artic Air has not created a genuine issue of material fact as to the inaccuracy of any aspect of the account.

Artic Air also contends that it is entitled to a credit for the $21,528.76 deducted from the Southern Pipe employee's wages. Artic Air argues that the deductions worked to its benefit to both reduce its debt and reduce the amount in controversy so that the court lacks subject matter jurisdiction. Southern Pipe has pointed to testimony and documentation, as discussed above, that shows that the wage deductions were made for the benefit of the local store in the event this account is never collected. The agreement between the local store and its employee is that the deductions will be returned to him if the customer, Artic Air, actually pays its debt. Arctic Air has not produced any competent evidence to dispute Southern Pipe's testimony about the arrangement between Southern Pipe and its employee. Based on the evidence presented, the court does not find that the wage deductions operated to the benefit of Artic Air to reduce its debt or the amount in controversy in this civil action.

Southern Pipe is entitled to summary judgment for the entire amount of the account, which is $68,858.02. Scott Parks and Tamra Parks signed a guaranty of the debt of Artic Air. They have not offered any individual defenses or attacked the validity of the guaranty.

They merely join in Artic Air's opposition, which was discussed above. Accordingly, Scott Parks and Tamra Parks are solidarily liable with Artic Air for the entire amount of the judgment that will be entered in this case.

**Attorney's Fees and Costs**

The Louisiana open account statute makes the debtor liable for reasonable attorney's fees when judgment is rendered in favor of the claimant. The Credit Application provides that in the event of a default in payment, and if the matter is placed in the hands of an attorney for collection, Artic Air agrees to pay all costs of collection "including reasonable attorney's fees." The court finds that Southern Pipe is entitled to an award of reasonable attorney's fees and that all costs should be assessed against the defendants.

Federal Rule of Civil Procedure 58(e) provides: "Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees." Accordingly, a judgment will be entered promptly. Southern Pipe stated in its motion that it would, if judgment is entered in its favor, submit a bill of costs and motion for attorney's fees per the rules and the court's direction. Doc. 22, n. 57.

Southern Pipe may file a bill of costs with the Clerk of Court pursuant to Fed. R. Civ. Pro. 54(d)(1) and Local Rule 54.3 (allowing 30 days after receiving notice of entry of judgment to file a bill of costs and supporting memorandum). As for fees, Rule 54(d)(2) provides that "a claim for attorney's fees and related nontaxable expenses must be made by motion" that is "filed no later than 14 days after the entry of judgment" unless a statute or a court order provides otherwise. The court orders that Southern Pipe file any motion for attorney's fees within the same 30-day period allowed for filing of a bill of costs.

**Conclusion**

For the reasons stated above, **Southern Pipe's Motion for Summary Judgment (Doc. 22)** is **granted**, and a judgment in its favor will be entered in accordance with this ruling. The motion will reflect that post-judgment interest is at the federal rate per 28 U.S.C. § 1961(a), which applies even in diversity cases. Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1280 (5th Cir. 1991).

The parties are encouraged to attempt to agree on a reasonable award of fees and costs. If they agree, they may submit a joint/consent motion for approval of an order that awards the agreed upon amount of fees and costs. See, e.g., Jackson v. Berkshire Hathaway, 18 CV 1146, Docs. 72 & 73. If they do not agree, the motion for fees should include a request for compensation for the attorney time spent litigating the fee issue and preparing the bill of costs.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of August, 2025.

Mark L. Hornsby
U.S. Magistrate Judge